Filed 7/2/26  Redd v. Tyson & Mendes CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LATOYA S. REDD,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TYSON & MENDES, LLP et al.,<br><br>Defendants and Appellants. | B341915<br><br>(Los Angeles County Super. Ct. No. 23STCV31118) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kevin Brazile, Judge.  Reversed and remanded with directions.

Tyson & Mendes and William R. Johnson; Baker, Keener & Nahra, Phillip A. Baker, and Christopher K. Berberian for Defendants and Appellants.

LaToya S. Redd, in pro. per., for Plaintiff and Respondent.

LaToya S. Redd (Redd) sued Tyson & Mendes LLP (Tyson & Mendes) and one of its attorneys William R. Johnson (Johnson) (collectively, Defendants), as well as several other law firms and lawyers, for failing to pay monies owed to her as part of the settlement of a prior lawsuit (the *Mezheritsky* Action). Pursuant to the anti-SLAPP statute (Code Civ. Proc.,[1] § 425.16), Defendants moved to strike Redd's complaint. The trial court denied the motion. We consider whether the trial court was correct in finding that the challenged causes of action do not arise from a statement or writing "made before a . . . judicial proceeding" or "in connection with an issue under consideration or review by a . . . judicial body . . . ." (§ 425.16, subds. (e)(1) & (2).)

## I. BACKGROUND

### A. *The* Mezheritsky *Action and the Dispute over How to Distribute Settlement Funds*[2]

In May 2018, Anna Mezheritsky (Mezheritsky) sued Thomas Kovich (Kovich) and Dorothy Kovich Klien (Kovich Klien), the owner of a four-unit apartment complex in Hermosa Beach, California, for economic and noneconomic damages arising out of her tenancy in one of the apartments. For six and a half months in 2019, Redd represented Mezheritsky. Following

---

[1]    Undesignated statutory references that follow are to the Code of Civil Procedure.

[2]    The summary that follows is derived from the allegations in the operative pleading and, to some degree, the parties' evidence submitted in connection with Defendants' special motion to strike (§ 425.16, subd. (b)(2)).

the conclusion of her representation, Redd filed a notice of attorney lien for $35,489.51 in fees owed to her for professional services.  Beginning in March 2021, Defendants represented Kovich in the *Mezheritsky* Action.

In August 2022, four years after Mezheritsky filed suit, the parties settled the case for $200,000—Kovich Klien, through her insurance carrier Liberty Mutual Insurance (Liberty Mutual), contributed $198,500, and Kovich personally contributed $1,500.  In its September 2023 order granting the Kovichs' motion to enforce the settlement, the trial court presiding over the *Mezheritsky* Action "encourage[d] Defendants to tender the settlement amount in a single cashier's check . . . ."

A dispute subsequently arose over whether Redd and five other lienholders should be included as payees on the settlement check in addition to Mezheritsky.  After Liberty Mutual advised it could not include Mezheritsky and the six lienholders on one check, Kovich Klien and Kovich asked the *Mezheritsky* court to order that the entire settlement amount should be tendered in a single check made payable only to Mezheritsky.  Redd filed declarations objecting to the issuance of a single check with a single payee, arguing that any such action would compromise her lien.  The *Mezheritsky* court denied Kovich and Kovich Klien's request.

Kovich Klien, Kovich, and Liberty Mutual then moved for leave to allow the insurer to file a complaint in intervention, which prompted Redd to submit a declaration in opposition claiming that this too would infringe on her lien.  In June 2024, the *Mezheritsky* court granted Liberty Mutual's request to intervene.  Liberty Mutual's complaint in intervention sought a

declaration from the court that a single check should be issued to Mezheritsky alone.

   B.   *Redd's Complaint and Defendant's Special Motion to Strike*

In December 2023, while the litigation concerning the settlement funds in the *Mezheritsky* Action was underway, and before Redd obtained a judgment against her former client Mezheritsky, Redd sued Kovich Klien, Kovich, and the attorneys who represented them in the *Mezheritsky* Action—including Defendants. Redd's complaint alleged six causes of action: conversion; intentional interference with prospective economic advantage; intentional interference with contractual relations; breach of fiduciary duty; common count; money had and received; and negligent interference with prospective economic advantage. The gist of Redd's allegations was that Defendants had "received money that was intended to be used for [her] benefit," they had not "paid [her] monies under her lien and pursuant to the settlement in the underlying case" (which she believed should have been paid the prior month), and Defendants' conduct was "wrongful" because there was no "legal or equitable reason" for the delay in payment. Redd also alleged she requested information from Defendants and they did "not communicat[e]" with her as a lienholder and failed to keep her "reasonably informed of significant developments."

Defendants responded by filing an anti-SLAPP special motion to strike Redd's complaint. They maintained the alleged wrongs were conduct protected by the anti-SLAPP statute—specifically, statements or writings made during a judicial proceeding or in connection with an issue under review by a

4

judicial body. Defendants also argued Redd could not prevail on any of her causes of action because the litigation privilege (Civ. Code, § 47) immunized their conduct and because Redd could not establish a probability of prevailing in any event. In support of their motion, Defendants submitted a declaration by attorney Johnson and asked the court to judicially notice filings in the *Mezheritsky* Action.

Redd opposed Defendants' anti-SLAPP motion. She contended Defendants' failure to pay Redd her share of the settlement was not protected conduct because "[h]ow a defendant pays settlement funds is a collateral issue and has nothing to do with the underlying action." She also contended that even if Defendants' conduct was arguably protected, the litigation privilege did not immunize their conduct and each of her causes of action was supported by the requisite "minimal merit."

In a supporting declaration, Redd stated that, from October 2022 to January 2024, Defendants "misled [her] by making promises to interplead the [settlement] funds and then, in bad faith, changed their mind and acted against [her] best interest." In addition, she declared Tyson & Mendes failed to provide her with information or answer questions about her lien. Attached to Redd's declaration were, among other things, copies of email correspondence between Redd, Defendants, and other counsel in the *Mezheritsky* Action. Redd also submitted a request for judicial notice of materials from the *Mezheritsky* Action.

C. *The Trial Court's Anti-SLAPP Ruling*

The trial court held an unreported hearing on Defendants' anti-SLAPP motion in September 2024. A minute order issued in

5

connection with the hearing states the "matter [was] called for hearing" and "[c]ounsel submit to the Court's tentative ruling."

That five-page ruling was adopted and subsequently issued as the ruling of the court. The ruling states the court granted the parties' requests for judicial notice and denied Defendants' anti-SLAPP motion because it found "Redd's claims do not arise from protected activity." Elaborating, the court reasoned the complaint did not arise from statements or writings made before a judicial proceeding (§ 425.16, subd. (e)(1)) "because the claims at issue do not target filings or statements made directly to the Court in [the *Mezheritsky* Action]. Rather, all of [Redd's] claims generally target Defendants' failure to disburse funds to [Redd] after a motion to enforce settlement was granted in the underlying matter"; the court's orders in the *Mezheritsky* Action also had not been challenged. The court further found the complaint did not arise from statements or writings in connection with an issue under consideration by a judicial body (§ 425.16, subd. (e)(2)) because it believed "the premise of all of the claims at issue is Defendants' failure to pay the subject lien; these claims do not target substantive litigation activity or communications."

Because it found Defendants' alleged conduct did not arise from protected activity, the trial court did not address whether Redd had showed a probability of prevailing on her claims.

## II. DISCUSSION

Reversal is required because Defendants made a prima facie showing that the allegedly wrongful conduct at issue in Redd's lawsuit arose from protected litigation activity. Defendants' delay in disbursing the *Mezheritsky* settlement funds

6

and their allegedly misleading post-settlement communications with Redd about the same was occasioned by the *Mezheritsky* court's directive to tender the settlement amount in a single cashier's check.  In other words, Redd's claims arose from conduct undertaken in the course of a pending court proceeding and in furtherance of a judicial directive by the bench officer overseeing that proceeding—and that qualifies as anti-SLAPP protected activity.

### A.     *The Anti-SLAPP Statute and the Standard of Review*

"[A] special motion to strike under section 425.16 involves a two-step process.  First, the moving defendant must make a prima facie showing 'that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech . . . ."' [Citation.]"  (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 420.)  If the defendant carries this burden, the plaintiff must then demonstrate its claims have at least "'minimal merit.'"  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384-385.)

We review an order granting or denying an anti-SLAPP motion de novo.  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)  We consider the parties' pleadings and affidavits describing the facts on which liability or defenses are predicated.  (§ 425.16, subd. (b)(2); see also *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89; *San Diegans for Open Government v. San Diego State University Research Foundation* (2017) 13 Cal.App.5th 76, 94.)

7

B. *Defendants' Alleged Conduct Was Protected Activity Under the Anti-SLAPP Statute*

1. *The anti-SLAPP statute and protection for litigation-related communications and communicative conduct*

A party filing a special motion to strike satisfies the first prong of the anti-SLAPP statute if he or she makes a prima facie showing that the plaintiff's cause of action "aris[es] from" an act the defendant performed in furtherance of the defendant's right of petition or free speech. (*Cotati, supra,* 29 Cal.4th at 78; accord, *Park*, *supra*, 2 Cal.5th at 1062 ["A claim arises from protected activity when that activity underlies or forms the basis for the claim"].) "In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action *itself* was based on an act in furtherance of the defendant's right of petition or free speech." (*Cotati*, *supra*, 29 Cal.4th at 78.) A defendant moving for protection under the anti-SLAPP statute is not required to prove its conduct is constitutionally protected as a matter of law. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 319.) The defendant need show only the existence of a legitimate issue as to whether the speech or petition activity is constitutionally protected. (*Id.* at 311-320.)

Whether a claim is based on protected activity turns on "whether the "'core injury-producing conduct'" warranting relief under that cause of action is protected." (*Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 698.) That is because "[t]he anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's activity that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning."

8

(*Navellier*, *supra*, 29 Cal.4th at 92; accord, *Park*, *supra*, 2 Cal.5th at 1060 ["[A] claim may be struck only if the speech or petitioning activity itself is the wrong complained of . . ."].)  In ruling on anti-SLAPP motions, courts should be "attuned to and . . . respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim."  (*Park*, *supra*, at 1064.)

There are four categories of "protected activity" under the anti-SLAPP statute.  The pertinent categories in this case cover "any written or oral statement or writing made before a . . . judicial proceeding" or "in connection with an issue under consideration or review by a . . . judicial body . . . ."  (§ 425.16, subds. (e)(1) & (2).)

"The anti-SLAPP protection for petitioning activities applies not only to the filing of lawsuits, but extends to conduct that relates to such litigation, including statements made in connection with or in preparation of litigation.  [Citation.] Indeed, courts have adopted 'a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16.' [Citation.]" (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537; accord, *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 [the anti-SLAPP statute protects "communicative conduct such as the filing, funding, and prosecution" of a legal action]; but see *Drell v. Cohen* (2014) 232 Cal.App.4th 24, 30 ["It is well settled that not all litigation-related conduct is protected activity"].)

Anti-SLAPP protection also extends to the settlement of lawsuits.  (*Navellier*, *supra*, 29 Cal.4th at 90 [defendant's negotiation and execution of release was protected activity because it "involved 'statement[s] or writing[s] made in

9

connection with an issue under consideration or review by a . . . judicial body' (§ 425.16, subd. (e)(2))"]; *Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141, 154 ["legal advice and settlement made in connection with litigation are within section 425.16, and may protect defendant attorneys from suits brought by third parties on any legal theory or cause of action 'arising from' those protected activities"].)

### 2. *Redd's causes of action arise from protected activity*

All of the alleged misconduct—Defendants' wrongfully withholding Redd's purported lien share of the *Mezheritsky* settlement by attempting to comply with the *Mezheritsky* court's directive to tender the settlement amount in a single cashier's check, misleading Redd about a possible interpleader in the *Mezheritsky* Action, not communicating with Redd about post-settlement developments in the *Mezheritsky* Action—arise out of Defendants' representation of Kovich in connection with issues under consideration in the on-going *Mezheritsky* Action. (*Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 208-210 [holding protection under section 425.16, subdivision (e)(1) & (2) was triggered because "the acts alleged in the complaint all arise out of defendants' representation of their clients in the underlying case"]; *Contreras v. Dowling* (2016), 5 Cal.App.5th 394, 399, 409, 411 ["all communicative acts by an attorney representing clients in pending or threatened litigation" are "unquestionably" protected activities under the anti-SLAPP statute]; *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 114-115 [law firm's representation of client in state court litigation and federal

10

forfeiture action was a "prima facie showing that Plaintiff's claims arise from Defendants' constitutionally protected petition rights"]; *GeneThera, Inc. v. Troy & Gould Professional Corp.* (2009) 171 Cal.App.4th 901, 908 ["An attorney's communication with opposing counsel on behalf of a client regarding pending litigation directly implicates the right to petition and thus is subject to a special motion to strike"].)

Relying on *Old Republic Construction Program Group v. The Boccardo Law Firm, Inc.* (2014) 230 Cal.App.4th 859, Redd counters that "any mentioning" of the *Mezheritsky* Action in her complaint was "mere context" because the "root of [her] claims center on [Defendants'] failure to pay [her] lien." Redd's claims about the nonpayment of her lien, however, would not exist in the absence of protected settlement activity undertaken by Defendants during the course of an ongoing court proceeding. *Old Republic*, by contrast, concerned the distribution of settlement funds *after* the formal "dismissal of all affirmative pleadings," including the insurer's complaint in intervention. (*Id.* at 863-864.)

Because Redd's claims ""'arise from'" and are "'based on'" the settlement" of the still-pending *Mezheritsky* Action, they are "subject to the provisions of the anti-SLAPP statute." (*O&C Creditors Group, LLC v. Stephens & Stephens XII, LLC* (2019) 42 Cal.App.5th 546, 567; see also *id.* at 569 ["cross-defendants' conduct in disbursing the settlement proceeds—i.e., carrying out the terms of the settlement agreement—cannot be neatly cleaved from the indisputably protected activity of negotiating and agreeing to the settlement itself"].) We remand so that the trial court may proceed to the second step of anti-SLAPP analysis and determine in the first instance whether Redd has a probability of

11

prevailing on the merits of her causes of action. (*Hunter v. CBS Broadcasting Inc.* (2013) 221 Cal.App.4th 1510, 1527; *Collier v. Harris* (2015) 240 Cal.App.4th 41, 58; *Iloh v. Regents of the University of California* (2023) 94 Cal.App.5th 947, 960.)

### C. Redd's Proffered Alternative Ground for Affirmance, Untimeliness, Fails

Redd argues the trial court's ruling can be affirmed (even if incorrect) because there is an alternative reason why Defendants' anti-SLAPP motion was defective: it was untimely. Redd argues Defendants had to file a responsive pleading or otherwise challenge the operative complaint by June 17, 2024, but their anti-SLAPP motion was not filed until August 7, 2024. Redd made this same timeliness argument to the trial court, but the court did not accept it—the court instead resolved the anti-SLAPP motion on the merits with no discussion of the timeliness issue. Because subdivision (f) of the anti-SLAPP statute provides an anti-SLAPP motion may be filed "within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper," we understand the trial court to have exercised its discretion to deem the motion timely and resolve it on the merits.[3] There is no basis on this record to hold that decision was an abuse of the court's discretion.

---

[3]  We are remanding the cause for further proceedings consistent with this opinion—most obviously, a determination of whether Redd's complaint has "minimal merit." Nothing in this opinion, however, precludes the court from revisiting, on a reasoned basis, its implied discretionary determination to find the anti-SLAPP motion was filed at a proper time for resolution

12

DISPOSITION

The order denying Defendants' special motion to strike is reversed. The matter is remanded for further proceedings consistent with this opinion. All parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, Acting P. J.

We concur:

MOOR, J.

KIM (D.), J.

---

on the merits. (See §§ 425.16, subd. (f), 1008; *Six4Three, LLC v. Facebook, Inc.* (2025) 109 Cal.App.5th 635, 643-647.)